1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAWRENCE P. SHANDOLA,

               Petitioner,

    v.

HAROLD CLARKE,

               Respondent.

Case No.  C05-5840RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**JULY 21st, 2006**

      This Habeas Corpus Action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.  Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is represented by counsel.

<u>INTRODUCTION</u>

      Petitioner is in custody pursuant to a  Pierce County conviction for first degree premeditated murder.  He was sentenced after a jury trial and the court sentenced him at the high end of the standard range.  Petitioner received 320 months plus a 60 month gun enhancement for a total of 380 months. (Dkt. # 11, Exhibit 1).  Petitioner was sentenced on September 7th, 2001.  (Dkt. # 10). After review of the record the court concludes the sole issue raised in this petition, an alleged

REPORT AND RECOMMENDATION Page - 1

1  violation of petitioner's Sixth and Fourteenth Amendment right to present a case,  is without merit

2  and petition is not entitled to relief.

3                                             FACTS

4       The Washington State Court of Appeals summarized the facts as follows:

5          At about 5:40 p.m. on September 11, 1995, Robert Henry was shot multiple
6  times at close range in a parking lot outside of his office by an unidentified shooter.
   Henry died of his wounds. Many witnesses heard the shooting and several observed a
   suspect wearing dark clothing and a mask; the suspect immediately left the parking lot
7  on a black motorcycle.

8          Upon learning of the homicide, Paula Henry, Henry's wife, called police and
   identified Shandola, her co-worker and Henry's former business partner, as a possible
9  suspect. The police questioned Shandola that evening on the front porch of his home.
   Shandola denied knowledge of the homicide, stating that he had been repairing his
10 house all day.

11         Near the same time, police found shotgun shells at the crime scene. And in
   April 1998, a shotgun was found under blackberry bushes on a hill near the parking
12 lot where Henry died. The State linked the shotgun to the crime scene, but could not
   directly connect the weapon to Shandola.

13
           Before the police completed their investigation, two potential witnesses died.
14 Jason Graham, who had provided the police with a description of a car parked near
   the crime scene, died in a car accident in August 1996. And Roscoe Buffington, who
15 had told police about seeing Shandola at his home on the day of the crime, died in
   July 1998.

16
           On January 23, 2001, the State charged Shandola with first degree murder for
17 Henry's homicide. The trial court denied Shandola's motions to suppress evidence
   and to dismiss the charge based on alleged discovery violations, and the matter
18 proceeded to trial on July 2, 2001. Sixty four State witnesses and eighteen defense
   witnesses testified.

19
           James Graham, Jason Graham's father, testified about the silver blue
20 Mercedes that he and his son had observed near the crime scene in the early afternoon
   of Henry's murder, a vehicle that was very similar in appearance to the Mercedes
21 Shandola owned. Henry's widow and his former acquaintances described the conflict
   between Shandola and Henry that arose out of their former business partnership. The
22 dispute between Henry and Shandola culminated in a 1993 New Year's Eve
   altercation where Shandola punched Henry. Henry later sued Shandola, seeking a
23 judgment to recover his medical damages.

24         Some of Shandola's co-workers testified that soon after the homicide,
   Shandola offered to sell them a shotgun and another co-worker who had cooperated
25 with the police investigation testified that Shandola had threatened him. Paula Henry
   testified that she had obtained a restraining order against Shandola for harassing her
26 after Henry's death.

27         Shandola presented an alibi defense, asserting, contrary to his earlier statement
   to the police, that he was at the home of a friend, Reta Peck, at the time of the
28 murder. The jury rejected the defense and found Shandola guilty as charged. The

REPORT AND RECOMMENDATION Page - 2

court then denied Shandola's motion for arrest of judgment or, alternatively, for a new trial and, instead, sentenced him to 380 months in prison.

(Dkt. # 11, Exhibit 14).

## PROCEDURAL HISTORY

On direct appeal Mr Shandola raised twelve issues:

(1)    The trial court erred when it denied Mr. Shandola's motion to dismiss because of the State's delay in filing the murder charge.

(2)    The trial court erred by not allowing into evidence Jason Graham's and Roscoe Buffington's statements.

(3)    The trial court erred in denying Mr. Shandola's motion to suppress evidence obtained from the search of Mr. Shandola's home and workplace.

(4)    The court erred by not granting Mr. Shandola's out-of-court statements made on September 11, 1995 because the police did not inform Mr. Shandola of his Miranda rights.

(5)    The trial court erred by not granting Mr. Shandola's motion to dismiss for discovery violations and destruction of evidence.

(6)    The trial court erred in allowing Robert Reinhard's testimony regarding the civil lawsuit between Mr. Henry and Mr. Shandola.

(7)    The trial court erred by denying defense expert testimony regarding plea bargain.

(8)    The trial court erred by not requiring the State to file a bill of particulars.

(9)    The trial court erred by admitting ER 404(b) evidence absent any exception and by admitting irrelevant and prejudicial evidence.

(10)   The trial court erred when it denied Mr. Shandola's post-trial motions to arrest judgment.

(11)   The trial court erred by denying Mr. Shandola's motion for a new trial pursuant to CrR 7.6(a)(5), (6), (7), and (8).

(12)   The trial court should reverse the convictions because the errors taken together prejudiced Mr. Shandola's right to a fair trial.

(Dkt. # 11, Exhibit 11 pages i through iv). On February 3rd, 2004 the Washington State Court of Appeals affirmed the conviction and on April 2th, 2004 the court amended the opinion slightly.

(Dkt. # 11, Exhibits 14 and 16).

Petitioner filed for discretionary review and raised the following issues:

(1)    Jason Graham's and Roscoe Buffington's statements are admissible pursuant to ER 803(a)(5) and the doctrine of completeness.

REPORT AND RECOMMENDATION Page - 3

1

2

    (2)      Mr. Shandola established prejudice in the State's delay in filing the murder
              charge.

3

    (3)      A search warrant may only be issued based upon probable cause and issued by
              a neutral and detached magistrate.

4

    (4)      The consciousness of guilt exception to ER 404(b) requires a showing of
              some affirmative conduct suggesting guilt.

5

(Dkt. # 11, Exhibit 17). On January 4, 2005, the Washington Supreme Court denied review without

6

comment. (Dkt. # 11, Exhibit 18).

7

      At the Federal Habeas Corpus level Mr. Shandola presents the court with only one issue.  He

8

contends he was denied his right to present a defense in violation of his Sixth and Fourteenth

9

Amendment rights by the trial court's exclusion of Jason Graham's and Roscoe Buffington's out of

10

court statements.  (Dkt. # 1, pages 3 and 4).  Jason Graham and Mr. Buffington are the two

11

witnesses who died prior to trial.

12

EVIDENTIARY HEARING

13

      If a habeas applicant has failed to develop the factual basis for a claim in state court, an

14

evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional

15

law, made retroactive to cases on collateral review by the Supreme Court that was previously

16

unavailable, or there is (2) a factual predicate that could not have been previously discovered through

17

the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish

18

by clear and convincing evidence that but for constitutional error, no reasonable fact finder would

19

have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996).

20

Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not set forth

21

any factual basis for his claims that could not have been previously discovered by due diligence.

22

Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder

23

would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary

24

hearing.

25

STANDARD

26

      Federal courts may intervene in the state judicial process only to correct wrongs of a

27

constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 is explicit in that a

28

federal court may entertain an application for writ of habeas corpus "only on the ground that [the

REPORT AND RECOMMENDATION Page - 4

1    petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28

2    U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief

3    does not lie for errors of state law.  <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990); <u>Pulley v. Harris</u>, 465 U.S.

4    37, 41 (1984); <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

5            Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated

6    on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was

7    contrary to, or involved an unreasonable application of, clearly established federal law, as determined

8    by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination

9    of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).  A

10   determination of a factual issue by a state court shall be presumed correct, and the applicant has the

11   burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

12   §2254(e)(1).

13                                           DISCUSSION

14           A.    Exhaustion.

15           Respondent concedes the issue has been exhausted and the court will consider the issue on

16   the merits.  (Dkt. # 10).

17           B.    Admission of Evidence.

18           A trial court has wide discretion in admitting or excluding evidence and will not normally be

19   overturned absent abuse of discretion.  Petitioner has the burden of proving abuse of discretion.

20   <u>Washington v. Demery</u>, 144 Wn.2d 753, 758 (2001).

21           On the date of the murder, September 11th, 1995, Jason Graham and his father, James

22   Graham, had lunch together some time between 1 P.M. and 3 P.M..  After lunch they returned to his

23   fathers place of work, Livingston Metals.  While in the parking lot both Jason and his father observed

24   an occupied blue Mercedes parked across the street from them.  (Dkt. # 11, Exhibit 6, verbatim

25   transcript testimony of James Graham).  The Mercedes was parked where the occupant could

26   observe the North Coast Electric building parking lot.  The victim, Robert Henry, owned and worked

27   at North Coast Electric.  After about twenty minutes the Mercedes made a U-turn and left the area.

28   (Dkt. # 11, Exhibit 6, verbatim transcript testimony of James Graham).

1    Jason specifically recalled the Mercedes having damage on the passenger side, a "crease".

2    The day after the murder Mr. Graham and his son approached detectives at the crime scene and gave

3    the detectives information about the blue Mercedes including giving taped statements, The

4    information included telling the detective about the car having damage to the passenger side.  Seven

5    days later detectives took Mr. Graham and Jason to an impound lot where Mr. Graham identified a

6    blue Mercedes as the car they had seen.  (Dkt. # 11, Exhibit 6 verbatim report testimony of James

7    Graham). The Mercedes belonged to Petitioner.  The passenger side door had a frisbee shaped

8    "crease."  James Graham was unequivocal in identifying the car in the parking as the same car he had

9    seen the day of the murder.  (Dkt. # 11, Exhibit 6 verbatim report testimony of James Graham).

10    According to petitioner, Jason Graham believed the car he saw the day of the murder was a

11    darker blue, and had a broken windshield as well as damage on the passenger side.  Petitioner asserts

12    Jason would have testified the car in the parking lot was not the same car. (Dkt. # 2).  Petitioner

13    references "CP 831 in his brief but does not provide the document for the court."  (Dkt. # 2, page ,

14    page 3).  Jason Graham died in a car accident August 13th, 1996.

15    Roscoe Buffington was petitioner's neighbor.  Mr. Buffington was interviewed by detectives

16    the day after the murder.  Mr. Buffington remembered seeing petitioner working on his home at

17    approximately 1 p.m. on the day of the murder.  (Dkt. # 1).  Mr. Buffington did not give a taped

18    statement and his statement to police was summarized by a detective in a written police report.

19    (Dkt. # 10, page 11).  Mr. Buffington died prior to trial.

20    Mr. Shandola testified he worked on his house in the afternoon and around 5 P.M. went to

21    the home of a friend, Reta Peck.  (Dkt. # 14).  Reta Peck testified that on the night of the murder

22    Mr. Shandola watched television with her from about 5:20 P.M. until about 7:30 P.M.  (Dkt. # 11,

23    Exhibit 8, verbatim report, testimony of Reta Peck). The jury rejected the alibi defense and found

24    petitioner guilty.

25    The Washington Court of Appeals analyzed the Superior Court decisions regarding the

26    admissibility of evidence and held:

27    Shandola challenges the court's reliance on the hearsay rule to exclude written
     summaries of witness statements that Buffington and Jason Graham allegedly made to
28    the police.

REPORT AND RECOMMENDATION Page - 6

1    Hearsay, an out of court statement offered for the truth of the matter asserted,
is generally inadmissible absent an applicable exception, ER 801 (c); ER 802.  The
2   purpose of the rule is to preserve the integrity of the court and the veracity of witness
statements. *Nordstrom v. White Metal Rolling & Stamping Corp,* 75 Wn.2nd 629,
3   632 (1969).

4    On September 11, 1995, Buffington told police detectives that he saw
Shandola working on his house earlier that afternoon.  The police wrote a summary of
5   the statement in a police report.

6    On September 13th, 1995 James and Jason Graham gave Detective Jim
Williams a tape recorded statement about the Mercedes they saw in the afternoon of
7   September 11, near the site of Henry's homicide.  On September 20, Williams took
James and Jason Graham to Shandola's car, which was in police custody, and asked
8   them to compare the observations of the car they saw on September 11 with
Shandola'a car.  Williams summarized the September 20 statements in a police report.
9

    The trial court excluded the written summaries of Jason's September 20
10   statement and Buffington's statement as inadmissible hearsay.  But it relied on the ER
803 (a)(5) hearsay exception for a recorded recollection to admit the portion of
11   Jason's September 13 statement in which he describes a dent he observed in the
parked Mercedes.  Shandola argues that Jason's September 13 and September 20
12   statements and Buffington's statement were admissible under ER 803 (a)(5), and that
Jason's September 20 statement was admissible under the exception to the hearsay
13   rule for present sense impressions.

14    1.    ER 803 (a)(1)- Present Sense Impression.

15    Shandola argues that the court should have admitted Jason's September 20
statement to detective Williams under ER 803 (a)(1), which contains an exception to
16   the hearsay rule for comments describing present sense impressions made very close
in time to the perceived event.  *See State v. Martinez*, 105 Wn.App. 775, 783 20 P.3d
17   1062 (2001).  But Jason' September 20 statement comparing the car he saw on
September 11 to the car he observed on September 20 was made nine days after he
18   saw the Mercedes parked at the crime scene.  At the crux of the September 20
statement was the earlier observation, the statement does not fit within the exception
19   for present sense impressions.

20    Shandola offered Jason's unrecorded, unsworn September statement to prove
the truth of the matter.  It clearly was hearsay and Shandola has not shown any
21   exception to the hearsay rule applies.

22    2.    ER 803(a)(5) - Recorded Recollection

23    In certain circumstances, a recorded recollection is admissible evidence under
ER 803 (a)(5).  The declarant's availability to testify is not dispositive; however, the
24   record must satisfy four factors set forth in *Alvarado:*

25    (1).   The record pertains to a matter about which the witness once
had knowledge;
26
    (2).   The witness has an insufficient recollection of the matter to
27   provide truthful and accurate trial testimony;

28    (3).   The record was made or adopted by the witness when the matter was

1          fresh in the witness' memory; and

2                    (4).      The record reflect the witness' prior knowledge accurately.

3    89 Wn. App. 543, 548 949 P.2d 831 (1998).

4                    A trial court determines the fourth element on a "case-by-case basis" by
     examining the "totality of the circumstances," which includes the following factors:
5    "(1) whether the witness disavows accuracy; (2) whether the witness averred
     accuracy at the time of making the statement; (3) whether the recording process is
6    reliable; and (4) whether other indicia of reliability establish the trustworthiness of the
     statement." *Alvarado*, 89 Wn. App. At 551-552.

7

8                    Here, Buffington's statement and Jason's September 20 statement do not
     satisfy *Alvarado's* fourth foundational requirement.  Both statements are contained in
     police reports and merely reflect a detectives interpretation of the declarants'
9    observations.  As both statements are unsworn, unsigned, and not a tape recording.
     They lack any indicia of reliability.

10

11                   Shandola asks us to overlook the lack of formal indicia of reliability because
     the "seasoned" detectives who gathered the statements could have testified to the
     accuracy of the statements and because there is "no indication" that Buffington or
12   Jason disavowed their statements. Br. of Appellant at 78.  But that is insufficient to
     make the required affirmative showing of an accurate recording.  *See State v.*
13   *Derouin*, 116 Wn. App. 38, 46-47, 64 P.3d 35 (2003) (finding a tape recorded
     statement "more reliable than cases where an officer writes out the statement after
14   discussing its contents with the witness.").  Thus, the trial court did not abuse its
     discretion in excluding both statements.

15

16                   We agree, however, that the taped recording of Jason's September 13
     statement, unlike the two statements summarized in the police reports, does meet
     Alvarado's foundational requirements.  Shortly after the incident, Jason told the
17   police about seeing the Mercedes in the parking lot and his father, James Graham,
     affirmed Jason's statements through his video deposition that was presented to the
18   jury.  Both Jason and James provided detailed information, such as a description of
     the damage to the Mercedes and the way the car exited the parking lot.

19

20                   Thus, Jason's September 13 statement was admissible as a recorded
     recollection under ER 803(a)(5).  But the trial court allowed only those portions of
     the statements related to Jason's observation of a dent on the Mercedes and it did so
21   only to provide context for James Graham's video deposition about the dent.  The
     trial court stated:

22

23            The concern that I have is that Jim Graham, his testimony, in the
              deposition that was presented, made a statement about the information
              to the dent on the vehicle.  And that information is not coming from
24            his own observations.

25   .....

26            I think it would be prejudicial to not allow the portion of the testimony
              of Jason Graham - - portion of the recorded statement of Jason
27            Graham to come in and explain the dent hat he observed, because that
              was a critical part of the father's testimony. And helped identify the
28            vehicle in the mind of the father.

REPORT AND RECOMMENDATION Page - 8

1   9 RP at 2316.

2       Although Jason's September 13 statements are generally duplicative of his
3   father's testimony, only Jason mentioned that the Mercedes had a cracked windshield.
    Thus, the trial court erred in limiting the admission of Jason's September 13
4   statement.

5       A trial court's evidentiary errors are harmless when a reasonable person can
    conclude that the wrongfully omitted evidence "is of minor significance in reference
    to the overall, overwhelming evidence as a whole." *State v. Bourgeois*, 133 Wn.2d
6   389, 403, 945 P.2d 1120 (1997) (citation omitted); *see also Carleton*, 82 Wn.App at
    686-87.  A reasonable person could so conclude here.
7
8       Except for stating that the Mercedes has a cracked windshield, Jason's
    September 13 statement was cumulative and consistent with James Graham's
    September 13 statement and video deposition testimony.  Both father and son
9   observed the car at the same time and discussed the Mercedes' color and how the car
    exited the parking lot; both their statements contained ambiguities and inconsistencies
10  about the Mercedes; and neither could identify the vehicle's driver.

11      James Graham did not notice any damage to the Mercedes but he recalled in
    his video deposition that Jason had observed a dent in the car.  James Graham could
12  not clarify if the car was a four-door or two-door sedan but the jury viewed numerous
    photos of Shandola's Mercedes and had the opportunity to compare these photos to
13  James Graham's statements.

14      Finally, the connection between Shandola's Mercedes and the Mercedes that
    Jason and James Graham observed at the crime scene was only a small portion of the
15  evidence that the jury considered.  The jury also heard extensive evidence about
    Shandola's motive and opportunity to kill Henry; about the civil law suit between
16  them; and about Shandola's conduct toward Paula Henry.  The exclusion of Jason's
    recollection about the cracked windshield was not prejudicial and, thus was harmless.
17
    (Dkt. # 11, Exhibit 14, pages 20 to 23).
18
19      This was the last reasoned ruling on this matter in the state court.  This court can grant relief

20  in Habeas only if the last reasoned ruling was a decision that was contrary to, or involved an

21  unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

22  resulted in a decision that was based on an unreasonable determination of the facts in light of the

23  evidence presented to the state courts.  28 U.S.C. §2254(d).

24      This court has reviewed the record presented by respondent and concurs with the

25  Washington State Court of Appeals.  (Dkt. # 11, Exhibits 3 to 10).  In the context of all the evidence

26  presented to the jury the exclusion of Jason Graham's taped statement indicating the Mercedes had a

27  cracked windshield was harmless error.  The jury heard in great detail about the relationship between

28  the Henrys and Mr. Shandola.  (Dkt. # 11, Exhibits 3 to 10).  The record shows overwhelmingly

REPORT AND RECOMMENDATION Page - 9

1  that there was motive, opportunity, and evidence of premeditation to kill Mr. Henry.

2       Mr. Shandola had attempted on a number of occasions to hire co-workers to injure Mr.

3  Henry.  (Dkt. # 11, Exhibits 3 to 10).  He had told co-workers he would kill Mr. Henry rather than

4  pay the judgement he owed on a civil suit.  (Dkt. # 11, Exhibit 4, page 880).  After the murder he

5  asked a co-worker if he wanted to buy a shot gun.  Further, Mr. Shandola owned a flat black

6  motorcycle, like the one seen leaving the crime scene.  (Dkt. # 11, Exhibits 3 to 10).  In addition,

7  evidence about Mr. Shandola's conduct toward Ms. Henry after the murder was placed before the

8  jury.

9       In lights of the evidence presented this court cannot conclude the Washington Court of

10  Appeals decision finding the evidentiary omission harmless error was an unreasonable application of

11  clearly established federal law.  Nor can this court say the Washington Court of Appeals ruling was

12  unreasonable in light of the evidence presented to the state court.  Accordingly this petition should

13  be **DISMISSED.**

14                              CONCLUSION

15       This petition is should be **DISMISSED** for the reasons stated in the Report and

16  Recommendation. A proposed order accompanies this report and recommendation.

17       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

18  parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.

19  R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

20  appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

21  72(b), the clerk is directed to set the matter for consideration on **July 21st 2006**, as noted in the

22  caption.

23       DATED this 29th day of June, 2006.

24

25                              /S/ J. Kelley Arnold
                                J. Kelley Arnold
26                              United States Magistrate

27

28

REPORT AND RECOMMENDATION Page - 10